*C. H. Toll*, Attorney General, for relator.

*Alpheus Wright*, for respondent.

---

## THE PEOPLE *ex rel.* v. THE COMMISSIONERS *et al.* OF GRAND COUNTY.

(*Supreme Court of Colorado, December Term, 1881—Mandamus.*)

1. CONSTITUTIONAL LAW—PRE-EXISTING STATUTE IN CONFLICT WITH CONSTITUTION REPEALED THEREBY. The constitution of the State of Colorado provides that "the General Assembly shall not pass special or local laws in any of the following enumerated cases, that is to say   *   *   * locating or changing county seats.   *   *   *   In all other cases where a general law can be made applicable no special law shall be enacted." And the schedule of the constitution provides that "all laws in force at the adoption of this constitution, so far as not inconsistent therewith, shall remain of the same force as if this constitution had not been adopted, until they expire by their own limitation, or are altered or repealed by the General Assembly." *Held*, that a special law of the Territory in relation to the removal of county seats, being clearly within the inhibitory provisions of the constitution respecting laws of a local application relating to that subject, did not remain in force after the adoption of the constitution.

2. SAME—CONSTITUTION NOT SELF-EXECUTING. Section 2 of article XIV, of the constitution, which declares that "the General Assembly shall have no power to remove the county seat of any county, but the removal of county seats shall be provided for by general laws," is not self-executing.

3. SAME—REMOVAL OF COUNTY SEATS. No provision having been made by the General Assembly after the adoption of the constitution, prior to February 11, 1881, for the removal of county seats, it follows that the attempted proceedings to remove the county seat of Grand county within that period, were without authority and void.

STONE, J. The admitted facts in the pleadings are, that prior to November, 1880, the county seat of Grand county was at Hot Sulphur Springs. At the general election in November, 1880, upon previous notice caused to be given by the board of county commissioners of that county, a vote was had upon the question of removing the county seat from Hot Sulphur Springs to Grand

Lake. Upon a canvass of the votes by the county board of canvassers, it was declared by a majority of the board that a majority of all the legal votes cast upon the question of the location of the county seat was against the location at Grand Lake and in favor of the location at Hot Sulphur Springs. Afterwards, on the 9th day of April, 1881, the board of county commissioners of said county proceeded to review the canvass and count of the votes made by the county board of canvassers, and, upon such review, a majority of the said board of county commissioners declared that a majority of the legal votes cast upon the question at the election as aforesaid was in favor of the location of the county seat at Grand Lake, and thereupon ordered all of the county offices, together with all that appertained thereto, to be removed to Grand Lake. That thereupon, afterwards, on the 18th day of April, 1881, the said order was carried into effect, and thenceforward, until the filing of the petition herein, all the public business which is by law required to be transacted at the county seat has been had and done at said Grand Lake as the county seat of Grand county.

The present proceeding is an application to this Court for a writ of *mandamus*, to compel the county officers of Grand county to remove the county offices, with the records, books, papers, and whatever pertains to the same, from Grand Lake back to Hot Sulphur Springs, as the lawful county seat of the county. The answer to the alternative writ by the parties to whom it was directed, is demurred to by the petitioner on the ground that the answer does not show sufficient facts to excuse the obedience of the writ, and the case is submitted upon hearing had upon the demurrer.

Various objections are set up by counsel for petitioner, in his argument and brief, against the power and authority of the board of county commissioners to remove the county seat in question; but we will first consider an objection which deals directly with the validity of the statute under which the vote was had upon the proposition for changing the county seat, an objection which, in short, questions the existence of any law by virtue of which the location of any county seat could then be changed.

The law under which the proceedings for the removal of the county seat in this case were had, being the only statutes upon

the subject of such removals, is contained in Chapter XX of the Revised Statutes, and the amendatory act of February 9, 1876.

Section 42 of Chapter XX of the Revised Statutes is as follows:

"Whenever the legal voters of any county are desirous of changing their county seat, at any time, upon petition being presented to the county commissioners, signed by a majority of them, to be ascertained by said commissioners, it shall be the duty of such commissioners to require the sheriff, in giving the notice for the next county election, to notify said voters to designate upon their ballots, at said election, the place of their choice, and if, upon canvassing the votes polled or given, it shall appear that any one place has a majority of all the votes polled, such place shall be the county seat, and notice of such change shall be given as provided in section 41."

The amendatory act of 1876, referred to, (Ses. Laws 1876, p. 58,) consists of but one section, which is as follows:

"That Section 42 of Chapter XX of the Revised Statutes of Colorado be and the same is hereby amended, by striking out the words, 'a majority' in the ninth line of said section, and inserting instead thereof the words, 'two-thirds,' and by inserting in the tenth line of said section, before the word 'vote,' the word 'legal;' *Provided*, that this act shall not apply to the counties of Weld, Clear Creek, Summit, Grand, San Juan, La Plata and Elbert."

It will be observed that the apparent object of this amendment, as well as its effect, was, that while in certain counties named a majority of the votes cast upon the question of a change of the county seat should be sufficient to control, in all the other counties two-thirds of the whole number of votes cast were required to accomplish a like purpose.

This was a radical change in the whole law upon the mode of removal, inasmuch as it operated to convert a general law, having a uniform operation throughout the whole Territory, into a special law, or one having a local and varied application to the different counties. In other words, to accomplish the same purpose in each county, the law for such purpose was made to apply differently in different ·counties. Hence the law as it thus stood at the time of the adoption of the constitution of the State was in conflict with the express inhibition of Sec. 25 of

Art. V of that instrument, which provides, that "The General Assembly shall not pass special or local laws in any of the following énumerated cases—that is to say: &ast; &ast; &ast; &ast; locating or changing county seats." &ast; &ast; &ast; "In all other cases where a general law can be made applicable, no special law shall be enacted." And the first section of the schedule of the constitution declares, that "all laws in force at the adoption of this constitution shall, *so far as not inconsistent therewith*, remain of the same force as if this constitution had not been adopted, until they expire by their own limitation, or are altered or repealed by the General Assembly."

The law in question being clearly inconsistent with the inhibitory provisions of the constitution respecting laws of a local application relating to the changing of county seats, did not therefore remain in force after the adoption of the constitution.

Sec. 2 of Art. XIV of the constitution declares, that "The General Assembly shall have no power to remove the county seat of any county, but the removal of county seats shall be provided for by general law." &ast; &ast; &ast;

But this provision of the constitution is not self-operative, so as to allow the holding of an election under it for such purpose without further legislation on the subject. It expressly declares that the removal of county seats shall be provided for by general law. This the Legislature, prior to February 11, 1881, had omitted to do. There was, therefore, at the time of the election in question, no machinery provided for such purpose, no particular mode and manner prescribed as to giving notice, the form of ballots, the canvass and count of votes, and the other ways and means of regulating the proceedings so as to carry out the constitutional requirements.

It follows that the then existing statutes, constituting an entire law, come under the ban of the constitution as a whole; no part can stand alone; but all fell together upon the adoption of the fundamental law of the State, so that, at the time of the attempted proceedings to change the county seat of Grand county, such proceedings were without authority of law, and wholly void.

38

Inasmuch as our conclusion upon this point, raised under the demurrer, disposes of the case, we need not consider the other points made by the counsel at the hearing.

The demurrer is sustained, and the peremptory writ of mandamus is ordered accordingly.

*L. B. France*, for relator.

*R. S. Morrison*, for respondents.